Chief Judge JACOBS concurs in a separate opinion.
CALABRESI, Circuit Judge:
During a bar brawl, Petitioner-Appellant Omar Gutierrez chased John Villaplana and fatally stabbed him in the chest. Gutierrez was convicted of depraved indifference murder under New York Penal Law § 125.25(2), and sentenced to twenty-five years to life in prison. After the Appellate Division affirmed Gutierrez’s conviction and his application for leave to appeal to the New York Court of Appeals was denied, Gutierrez filed a timely petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York. In his petition, Gutierrez argued, inter alia, that the evidence introduced at trial was legally insufficient to support his conviction. The district court (Feuerstein, J.), relying on the state court’s finding that counsel failed to make a contemporaneous objection at trial to the legal sufficiency of the evidence, dismissed the petition as procedurally barred. We hold that, though the claim was procedurally defaulted, it is nonetheless cognizable on habeas review. Since there was a fundamental shift in New York’s interpretation of its depraved indifference murder statute between the time of Gutierrez’s trial in 2001 and the time his conviction became final in 2005, the legal basis for a sufficiency challenge was not reasonably available to counsel at the time of trial, establishing “cause” for the failure to object. Accordingly, we REVERSE the district court’s dismissal of the petition.
Our review of the merits of Petitioner’s claim, however, brings unsettled issues of New York law to the forefront: (a) just how much of what kind of evidence supports depraved indifference convictions in New York, and (b) whether the change in New York’s law on depraved indifference murder applies retroactively to defendants like Gutierrez. Because we believe the *259 New York Court of Appeals should be given the opportunity to address these recurring and important questions of New York State law, we CERTIFY them to the New York Court of Appeals.
I. BACKGROUND
A. Factual Background and Procedural History
The facts are not in dispute. On June 13, 1999, Petitioner was involved in a bar brawl in Montauk, Long Island. Gutierrez was at Rick’s Crabby Cowboy Café (“Rick’s”) when a fight broke out between different groups of patrons. The fight escalated and later continued outside the bar into Rick’s parking lot where Gutierrez stabbed Narcisso Luis Villaplana. Gutierrez then pursued John Villaplana to a nearby driveway. There, Gutierrez fatally stabbed John Villaplana in his chest, producing two wound tracks. The presence of two wound tracks might be the result of a retraction and reinsertion of the knife, but could also indicate “the victim moving back, and then the victim for some reason going forward again.” According to trial testimony, Gutierrez fled the scene when a car approached, while Villaplana was still on his feet. The first wound, which passed through Villaplana’s heart, was three and three-quarters inches deep, and the second, which pierced his lung, was two and three-quarters inches deep. Though Villaplana also sustained an injury as a result of striking his head on the ground, autopsy results confirmed that a stab wound caused his death.
Gutierrez was charged with: (a) murder in the second degree in violation of New York Penal Law § 125.25(1) (intentional murder) and New York Penal Law § 125.25(2) (depraved indifference murder) in connection with John Villaplana’s fatal stabbing, and (b) assault in the third degree in violation of New York Penal Law § 120.00(2) in connection with Narcisso Luis Villaplana’s stabbing. At trial, Gutierrez’s counsel moved to dismiss the depraved indifference murder charge, on the ground that, “as a matter of law, ... there [was] insufficient evidence to prove a prima facie case.” The trial judge denied the motion, and the jury convicted Gutierrez of depraved indifference murder and assault in the third degree, but acquitted him of intentional murder. Gutierrez was sentenced to an indeterminate term of imprisonment of twenty-five years to life on the depraved indifference conviction and to a concurrent determinate term of imprisonment of one year on the assault conviction.
On direct appeal, Petitioner argued, inter alia, that there was insufficient evidence to support a depraved indifference murder conviction and that New York Penal Law § 125.25(2) was unconstitutionally vague. On February 14, 2005, the Appellate Division affirmed Gutierrez’s conviction and sentence, concluding that his legal insufficiency claim was “unpreserved for appellate review,” and that some of Gutierrez’s other contentions were “either ... unpreserved for appellate review or without merit.” People v. Gutierrez, 15 A.D.3d 502, 503, 790 N.Y.S.2d 493 (N.Y.App.Div.2d Dep’t 2005). On June 14, 2005, Judge Smith, of the New York Court of Appeals, denied Gutierrez’s application for leave to appeal to that court. See People v. Gutierrez, 5 N.Y.3d 763, 801 N.Y.S.2d 257, 834 N.E.2d 1267 (2005).
On September 12, 2006, pursuant to New York Criminal Procedure Law § 440. 10, Gutierrez filed a motion to vacate his conviction. After the trial court denied the motion, see People v. Gutierrez, 14 Misc.3d 1213, 836 N.Y.S.2d 488 (Suffolk Cnty.Ct.2007) (unpublished table decision), and the Appellate Division affirmed, see People v. Gutierrez, 57 A.D.3d 1006, 871 N.Y.S.2d 325 (N.Y.App.Div.2d Dep’t 2008), *260 Judge Smith of the New York Court of Appeals once again denied Gutierrez’s application for leave to appeal to that court, see People v. Gutierrez, 12 NY.3d 816, 881 N.Y.S.2d 24, 908 N.E.2d 932 (2009).
On September 12, 2006, Gutierrez also filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court initially stayed the proceedings to permit Gutierrez to pursue his section 440.10 motion, after which Gutierrez filed an amended petition, arguing: (1) that the evidence presented at trial was legally insufficient to support his conviction for depraved indifference murder; (2) that his trial counsel was ineffective for failing to make a specific objection to the legal insufficiency of the evidence at trial; and (3) that New York Penal Law § 125.25(2) was unconstitutionally vague. See Gutierrez v. Smith, No. 06-CV-4939, 2010 WL 3855225, at *3, 2010 U.S. Dist. LEXIS 102137, at *8 (E.D.N.Y. Sept. 27, 2010). In September 2010, the district court denied Gutierrez’s petition and declined to issue a certificate of appealability. See id. at *10, 2010 U.S. Dist. LEXIS 102137, at *30-*31. On March 16, 2011, we granted Gutierrez’s motion for a certificate of appealability “with respect to [Gutierrez’s] claim that the evidence was legally insufficient to support his conviction for depraved indifference murder in violation of New York Penal Law § 125.25(2).”
B. The Evolution of “Depraved Indifference” Law in New York
“Depraved indifference” murder is a type of second degree murder in New York. Specifically, New York Penal Law § 125.25(2) provides that a person is guilty of murder in the second degree when “[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.” At the time of Gutierrez’s trial in 2001, the law on depraved indifference murder was governed by People v. Register, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (1983). In Register, the defendant entered a crowded bar with a loaded gun. Id. at 273, 469 N.Y.S.2d 599, 457 N.E.2d 704. After entering the bar and threatening to “kill somebody,” id. at 275, 469 N.Y.S.2d 599, 457 N.E.2d 704, he ultimately killed one man and seriously injured two others, id. at 273-74, 469 N.Y.S.2d 599, 457 N.E.2d 704. The Court of Appeals announced that the requisite mens rea for depraved indifference murder was “recklessness,” id. at 278, 469 N.Y.S.2d 599, 457 N.E.2d 704, and held that the crime required a showing of “circumstances evincing a depraved indifference to human life,” id. at 274, 469 N.Y.S.2d 599, 457 N.E.2d 704 (quoting N.Y. Penal Law § 125.25(2)). In upholding the trial court’s refusal to instruct the jury that the defendant’s intoxication could negate a showing of depraved indifference, the Court noted that “the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant’s reckless conduct.” Id. at 277, 469 N.Y.S.2d 599, 457 N.E.2d 704 (citation omitted). In that vein, the Court reasoned that “depraved mind murder is distinguishable from manslaughter, not by the mental element involved but by the objective circumstances in which the act occurs.” Id. at 278, 469 N.Y.S.2d 599, 457 N.E.2d 704.
According to the Court of Appeals, the law as articulated in Register “remained static” until its decision in People v. Sanchez, 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204 (2002). Policano v. Herbert, 7 N.Y.3d 588, 595, 825 N.Y.S.2d 678, 859 N.E.2d 484 (2006). Critically, Sanchez *261 was decided in 2002, after Gutierrez’s trial and conviction. In Sanchez, a 4-3 decision that produced three dissents, a divided Court of Appeals rejected the defendant’s argument that his conduct “was consistent only with an intentional killing” and therefore could not sustain a conviction for depraved indifference murder. 98 N.Y.2d at 376, 748 N.Y.S.2d 312, 777 N.E.2d 204. The Court thus reaffirmed Register, reiterating that “the requirement of circumstances evincing a depraved indifference to human life under [New York] Penal Law § 125.25(2) murder focuses not on the subjective intent of the defendant, ‘but rather upon an objective assessment of the degree of risk presented by defendant’s reckless conduct.’ ” Id. at 379-80, 748 N.Y.S.2d 312, 777 N.E.2d 204 (quoting Register, 60 N.Y.2d at 277, 469 N.Y.S.2d 599, 457 N.E.2d 704). But Sanchez, in time, proved more notable for the presence of the three separate dissents in the seven person Court of Appeals, than for its majority opinion. The dissents, emphasizing “the problems attendant to using a charge of depraved indifference as a proxy for intentional murder,” id. at 388, 748 N.Y.S.2d 312, 777 N.E.2d 204 (Smith, J., dissenting), would have “overrule[d] Register expressly and restore[d] depraved indifference as the key mens rea element,” id. at 415, 469 N.Y.S.2d 599, 457 N.E.2d 704 (Rosenblatt, J., dissenting).
After Sanchez, New York law continued to evolve while Gutierrez’s case was on direct appeal. Three cases in particular — People v. Hafeez, 100 N.Y.2d 253, 762 N.Y.S.2d 572, 792 N.E.2d 1060 (2003), People v. Gonzalez, 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273 (2004), and People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634 (2004) — all decided before Gutierrez’s conviction became final on September 12, 2005,[1] moved New York law away from the holding in Register as reaffirmed by a bare majority in Sanchez. In Hafeez, decided on June 10, 2003, which involved yet another incident at a bar, the Court of Appeals held that a codefendant’s “conduct was consistent with intentional murder as opposed to depraved indifference murder.” 100 N.Y.2d at 258, 762 N.Y.S.2d 572, 792 N.E.2d 1060. In Gonzalez, decided on March 25, 2004, the court again found the evidence legally insufficient to support a conviction for depraved indifference murder, holding that “[t]he only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground.” 1 N.Y.3d at 467, 775 N.Y.S.2d 224, 807 N.E.2d 273. The Court reasoned that “a person cannot act both intentionally and recklessly with respect to the same result,” id. at 468, 775 N.Y.S.2d 224, 807 N.E.2d 273; that when “a defendant’s conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct,” id. at 467, 775 N.Y.S.2d 224, 807 N.E.2d 273. The Court went further and explained that “[djepraved indifference murder does not mean an extremely, even heinously, intentional killing,” but instead “involves a killing in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death *262 occurs.” Id. at 468, 775 N.Y.S.2d 224, 807 N.E.2d 273.
Finally, Payne, decided on October 19, 2004, which involved a shooting at pointblank range, firmly established the principle that “[ajbsent the type of circumstances in, for example, Sanchez (where others were endangered), a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder.” 3 N.Y.3d at 272, 786 N.Y.S.2d 116, 819 N.E.2d 634. Focusing on the difference between depraved indifference murder and intentional murder, the Court held that “[t]he use of a weapon can never result in depraved indifference murder when ... there is a manifest intent to kill.” Id. at 271, 786 N.Y.S.2d 116, 819 N.E.2d 634. Further, it noted that “[f]iring more rounds or inflicting more wounds does not make the act more depravedly indifferent, but more intentional.” Id. at 272, 786 N.Y.S.2d 116, 819 N.E.2d 634.
After Gutierrez’s conviction became final on September 12, 2005, the law moved even further in the same direction. People v. Suarez, decided on December 22, 2005, underscored Payne and held that “a defendant who intends to injure or kill a particular person cannot generally be said to be ‘indifferent’- — depravedly or otherwise- — to the fate of that person.” 6 N.Y.3d 202, 211, 811 N.Y.S.2d 267, 844 N.E.2d 721 (2005). Finally, the development which began with the dissents in Sanchez culminated in People v. Feingold, decided on July 5, 2006. 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (2006). There, the Court of Appeals expressly overruled Register and Sanchez and concluded that depraved indifference referred to a mental state. Id. at 294, 819 N.Y.S.2d 691, 852 N.E.2d 1163. In other words, the Court held that a jury could not rely solely on objective circumstances to support a conviction for depraved indifference murder. Surveying its case law beginning with Hafeez, the Court concluded that “the law ha[d] changed to such an extent” that Register and Sanchez “should no longer be followed.” Id.
II. DISCUSSION
The Court reviews a district court’s ruling on a habeas petition de novo. See Thibodeau v. Portuondo, 486 F.3d 61, 64 (2d Cir.2007).
A. Procedural Default
New York’s contemporaneous objection rule requires a party to object to what he or she believes is a legal error in a trial court’s ruling or instruction “at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.” N.Y.Crim. Proc. Law § 470.05(2). Where a party fails to lodge such a contemporaneous objection, the issue is unpreserved for appeal because of the party’s procedural default. “If a state appellate court refuses to review the merits of a criminal defendant’s claim of constitutional error because of his failure to comply with such a ‘contemporaneous objection’ rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review.” Peterson v. Scully, 896 F.2d 661, 663 (2d Cir.1990) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)); see also Harris v. Reed, 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (explaining that federal habeas review is barred if the constitutional claim was denied by a state court on a state procedural “ground that is both ‘independent’ of the merits of the federal claim and an ‘adequate’ basis for the court’s decision”).
The Supreme Court, however, has carved out two exceptions to this bar on *263 habeas review of procedurally defaulted claims. “Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either ‘cause’ and actual ‘prejudice,’ or that he is ‘actually innocent.’” DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir.2006) (brackets omitted) (quoting Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)); see also Murray v. Carrier, 477 U.S. 478, 485, 496, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986).
Gutierrez concedes that his counsel lodged only a general objection to the legal sufficiency of the evidence at trial, Gutierrez, 2010 WL 3855225, at *1 n. 3, 2010 U.S. Dist. LEXIS 102137, at *4 n. 3, which the Appellate Division deemed insufficient to preserve the issue for appellate review, Gutierrez, 15 A.D.3d at 503, 790 N.Y.S.2d 493. On habeas review, therefore, we can only reach the merits of Gutierrez’s legal insufficiency claim if he can establish either “cause” and “prejudice” or “actual innocence.” We conclude that Gutierrez adequately demonstrates “cause” for his trial counsel’s failure to lodge a specific objection and “prejudice” from that failure.[2]
There are two related ways to establish “cause.” First, if some objective factor, external to Petitioner’s defense, interfered with his ability to comply with the state’s procedural rule, the cause requirement is met. See McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). An example of such an objective impediment is “a showing that the factual or legal basis for a claim was not reasonably available to counsel” at the time of trial. Strickler v. Greene, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Relatedly, futility may constitute cause “where prior state case law has consistently rejected a particular constitutional claim.” DiSimone, 461 F.3d at 191. But “futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.” Bousley, 523 U.S. at 623, 118 S.Ct. 1604 (quoting Engle v. Isaac, 456 U.S. 107, 130 n. 35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)) (internal quotation marks omitted).
The “prejudice” requirement is met by establishing “actual prejudice resulting from the errors of which [Petitioner] complains.” United States v. Frady, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal quotation marks omitted). The error must have resulted in “substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.” Murray, 477 U.S. at 494, 106 S.Ct. 2678 (quoting Frady, 456 U.S. at 170, 102 S.Ct. 1584) (internal quotation mark omitted).
*264 On appeal, Gutierrez offers two explanations for counsel’s failure to object specifically to the legal sufficiency of his depraved indifference murder conviction. First, he argues that any objection by counsel would have been futile because the controlling law, ie., Register, would have rendered the objection baseless. Second, he asserts that the legal basis of his claim was unavailable at the time of trial and that this constituted an objective factor external to his defense.
These “cause” arguments are both predicated on the claim (a) that New York law on depraved indifference murder changed drastically after Gutierrez’s trial in 2001, and (b) that he should not be penalized for his failure to anticipate that change. We had occasion to consider a virtually identical argument in DiSimone, where the petitioner argued “that it would have been futile to make an insufficiency argument on direct appeal,” 461 F.3d at 191, and more recently in Brown v. Ercole, 353 Fed.Appx. 518, 519 (2d Cir.2009) (summary order). In both cases we rejected the argument, finding that “cause” could not be established. Indeed, the district court in the instant case, in declining to reach the merits of Gutierrez’s claim, relied on our decision in Brown. But there is a fundamental difference between DiSimone and Brown, on one side, and the case before us, on the other. It is, quite simply, that Gutierrez’s trial occurred in 2001, before Sanchez was decided, while counsel in DiSimone and Brown had the benefit of Sanchez.
In DiSimone, we explicitly noted that, at the time of the petitioner’s appeal, Sanchez had produced three separate dissents, providing a legal basis to counsel for a sufficiency challenge.' DiSimone, 461 F.3d at 191. At the time of Brown’s trial, in addition to Sanchez, at least two New York appellate courts, see Hafeez, 100 N.Y.2d at 258-59, 762 N.Y.S.2d 572, 792 N.E.2d 1060; People v. Gonzalez, 302 A.D.2d 870, 871-72, 755 N.Y.S.2d 146 (N.Y.App.Div.4th Dep’t 2003), had reversed depraved indifference murder convictions on grounds that subsequently came to reflect New York law on depraved indifference murder. For these reasons, we held that counsel in both DiSimone and Brown were on notice that the law was no longer static and that counsel could reasonably have argued that the evidence presented by the state in their cases was legally insufficient to support a conviction for depraved indifference murder.
In stark contrast, Gutierrez’s trial was held in 2001, before Sanchez was decided, before the appellate courts reversed the convictions in Hafeez and Gonzalez, and when Register was unquestionably still considered the law of New York. Given that the. Register interpretation was firmly ingrained in New York at the time of Petitioner’s trial in 2001, any legal sufficiency objection by Gutierrez would have been legally futile.
Similarly, we hold that the legal basis for a sufficiency claim was not available to counsel .at the time of Gutierrez’s trial as Register still controlled. When Gutierrez was tried, counsel could not be obliged to challenge preemptively the conviction based on what then was a totally unforeseeable development in the law. The shift in New York law that occurred after Petitioner’s trial constituted an “objective factor external to the defense [that] impeded counsel’s efforts to comply with the State’s procedural rule.” Strickler, 527 U.S. at 283 n. 24, 119 S.Ct. 1936; see also id. (“notfing] that a showing that the factual or legal basis for a claim was not reasonably available to counsel ... would constitute cause under this standard”). Accordingly, Gutierrez establishes “cause” *265 for counsel’s failure to make a contemporaneous objection at trial.
The “prejudice” requirement is also met. The difference between a conviction for murder in the second degree and one for manslaughter is substantial, the former carrying a significantly higher potential term of imprisonment. Thus, the submission of a depraved indifference murder charge to the jury worked to Petitioner’s “actual and substantial disadvantage,” Roccisano v. Menifee, 293 F.3d 51, 59 (2d Cir.2002) (emphasis omitted), because it allowed the jury to convict him of a crime for which the availability of legally sufficient evidence was dubious at best. See Reed v. Ross, 468 U.S. 1, 12, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). Indeed, it is still dubious enough to justify our certifying the question, in this case, to the New York Court of Appeals.
B. Merits of Gutierrez’s Legal Insufficiency Claim
“[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When considering the sufficiency of the evidence of such a state conviction, a federal court “must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor,” and, in doing this, “must look to state law to determine the elements of the crime.” Fama v. Comm’r of Corr. Servs., 235 F.3d 804, 811 (2d Cir.2000).
The change in New York law on depraved indifference murder has created a series of problems for federal courts on habeas review. Since the questions these cases raise are ones that are profoundly of New York law, when New York courts have spoken on the merits of a conviction for depraved indifference murder and on whether the evidence in a particular case was legally sufficient, we have tended to defer to that judgment. See, e.g., Epps v. Poole, 687 F.3d 46, 48 (2d Cir.2012). We have done so because, ultimately, how New York wishes to define depraved indifference murder is a question for New York. Difficulties arise, however, when, as in this case, New York affirms the conviction on procedural grounds that are not in keeping with federal requirements. For then we are left to judge a conviction that New York courts have not evaluated on the merits.[3]
And the merits of depraved indifference cases are hard to resolve in the first instance given the current state of New York law. There is, however, a way for us to become better informed as to how New York views a case like this one. New York law — in tandem with Second Circuit Local Rule 27.2(a) — permits us to certify to New York’s highest court “determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists.” N.Y. Comp.Codes R. & Regs. tit. 22, § 500.27(a). We believe that this ease presents issues as to which guid *266 anee from New York’s highest court would be helpful.
There are two questions as to which the highest court of New York has previously spoken in ways that would suggest that Gutierrez’s conviction cannot stand on the merits, but as to which lower New York courts have reacted in ways that leave us in doubt as to what New York law really is. The most important of these questions goes to just how much of what kind of evidence is sufficient to convict a defendant of depraved indifference murder. We have no doubt that, applying the law at the time of Gutierrez’s trial as articulated in Register, there was sufficient evidence to sustain a conviction for depraved indifference murder. But applying the law at the time Gutierrez’s conviction became final, the result is much less clear.[4] At the latter time, Petitioner gets the benefit of Hafeez, of Gonzalez, and, most notably, of Payne.
Payne instructs that “a one-on-one shooting or knifing ... can almost never qualify as depraved indifference murder.” 3 N.Y.3d at 272, 786 N.Y.S.2d 116, 819 N.E.2d 634 (emphasis added). Gutierrez argues that, by stabbing a single individual in the chest, he engaged in intentional conduct inconsistent with the mens rea for depraved indifference murder. As the State points out, however, there are additional considerations at play in the case before us: there was ongoing animus between different groups of patrons at the bar on the night of the stabbings, a violent fight broke out involving several individuals, Gutierrez chased and stabbed another individual just minutes before the fatal stabbing, and Gutierrez had no prior relationship or personal disagreement with either victim. We are not sure whether New York would view these facts as sufficient to support a jury finding of reckless conduct consistent with depraved indifference murder. Moreover, since New York never evaluated Gutierrez’s claim on the merits, there might very well be other facts that support Appellee’s assertion that Gutierrez acted recklessly that night. As a result, we seek guidance from New York on whether Gutierrez’s conduct sufficed to allow a jury to convict him of depraved indifference murder.
Another question also troubles us: Who gets the benefit of the change in New York’s interpretation of its depraved indifference murder statute? We are not completely certain whether the law articulated in Payne (and ultimately, Feingold) applies retroactively to defendants tried at the time Register controlled but whose appeals were not yet final when those decisions were handed down, or whether it only applies prospectively to those defendants tried and sentenced after the decisions were rendered. This question, on its own, would not be worth certifying because the Court of Appeals has spoken on the issue. In Feingold itself, though the defendant had been convicted in November 2004, the Court of Appeals applied the new interpretation of the depraved indifference statute to that defendant. 7 *267 N.Y.3d at 296-97, 819 N.Y.S.2d 691, 852 N.E.2d 1163. More than two years after Feingold, in People v. Jean-Baptiste, 11 N.Y.3d 539, 872 N.Y.S.2d 701, 901 N.E.2d 192 (2008), the Court of Appeals confronted the question of “whether ... Feingold applies only prospectively to those defendants sentenced after that decision was rendered or whether that decision should apply to cases, such as the one now before us, which are pending on direct appeal.” Id. at 542, 872 N.Y.S.2d 701, 901 N.E.2d 192. The Court held that “the standard as articulated in Feingold should apply to cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction.” Id.
Jean-Baptiste notwithstanding, New York courts continue to wrestle with the question of the retroactive application of Feingold. Most recently, in People v. Snyder, 91 A.D.3d 1206, 937 N.Y.S.2d 429 (N.Y.App.Div.3d Dep’t 2012), the Appellate Division, Third Department, though unanimously affirming the defendant’s conviction, split three to two on whether the defendant was entitled to review under Feingold or Register. The majority, citing Jean-Baptiste, concluded that because the “[djefendant’s direct appeal was pending when [the] change in the law occurred,” the legal sufficiency claim should be decided “in accord with the law as it now exists [as stated in Feingold].” Snyder, 91 A.D.3d at 1211, 937 N.Y.S.2d 429 (citing Jean-Baptiste, 11 N.Y.3d at 541-42, 872 N.Y.S.2d 701, 901 N.E.2d 192). The concurrence, though acknowledging Jean-Baptiste, disagreed, concluding that “the legal sufficiency of the evidence supporting [the defendant’s] convictions should be reviewed in light of the law as it existed at the time of trial.” Id. at 1215-16, 937 N.Y.S.2d 429 (Stein, J., concurring). In view of the existence of this very close decision in which the concurrence cited and, in effect, deemed inapplicable what the Court of Appeals seemed to have said in Jean-Baptiste — and given that we are certifying the case on the issue of the sufficiency of the evidence — we seek guidance on this question as well.
We believe that these two questions of New York law are best left to New York. Resolution of these questions “requires value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make,” Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 42 (2d Cir.2010); the relevant New York cases make it difficult for us “to predict how the Court of Appeals would resolve” these questions, id.; and these questions are “determinative of [the] claim before us,” O’M ara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir.2007) (internal quotation mark omitted). We therefore offer the New York Court of Appeals the opportunity to guide us, should it opt to do so. Should the New York Court of Appeals choose to grant certification, we, as we always do when we certify, invite it to address any other issues it deems germane to the questions certified. And in particular, we invite the Court of Appeals to address the questions posed in Chief Judge Jacobs’ concurring opinion.
Let us be clear: We, as a federal court, are reluctant to release defendants whose defense to depraved indifference murder is that they were guilty of intentional murder, where those defendants were acquitted of intentional murder and convicted of depraved indifference murder at a time when New York seemed to permit this. We will, of course, follow the law of New York. But before we order the release of such defendants, we wish to be sure that this is the result New York wants.
*268 III. CONCLUSION
For the foregoing reasons, we REVERSE the district court’s finding that Petitioner’s legal insufficiency claim was procedurally defaulted. But since resolution of the merits of that claim turns on unresolved and recurring issues of New York state law, we certify the following questions to the New York Court of Appeals:

Questions Certified:

(1) Is the defendant’s conduct in this case sufficient to convict him of depraved indifference murder?
(2) Does People v. Payne apply retroactively to defendants convicted of depraved indifference murder when People v. Register still controlled, but whose appeals were still pending when Payne was decided?
It is hereby Ordered that the Clerk of Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification.
REVERSED in part. Decision RESERVED in part.

. In New York, a petitioner’s conviction becomes final ninety days after leave to appeal to the Court of Appeals is denied. See Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir.2005). Here, the Appellate Division affirmed Gutierrez's conviction on February 14, 2005, and Judge Smith of the Court of Appeals denied leave to appeal to that court on June 14, 2005.

. For purposes of this case, we are assuming arguendo that the contention of actual innocence made by Petitioner would fail. We do this because we find cause and prejudice and need not find a successful claim of actual innocence in order to excuse the procedural bar. We note, however, that the issue of actual innocence in circumstances like the one before us has been treated differently by various federal courts. See generally Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Compare Johnson v. Bellnier, No. 09-CV-00381 (KAM)(RER), 2011 WL 3235708, at *10-*15, 2011 U.S. Dist. LEXIS 82104, at *30-*44 (E.D.N.Y. July 27, 2011), and Fernandez v. Smith, 558 F.Supp.2d 480, 494 .(S.D.N.Y.2008), with Gutierrez v. Smith, No. 06-cv-4939, 2010 WL 3855225, at *8-*10, 2010 U.S. Dist. LEXIS 102137, at *23-*30 (E.D.N.Y. Sept. 27, 2010), and Orcutt v. Fillion, No. 9:09-cv-205, 2010 WL 2696471, at *4-*5, 2010 U.S. Dist. LEXIS 66962, at *14-*17 (N.D.N.Y. June 9, 2010), report and. recommendation adopted by 2010 WL 2696474, 2010 U.S. Dist. LEXIS 66975 (N.D.N.Y. July 6, 2010).

. The concurring opinion suggests that the rejection of Gutierrez’s weight of the evidence claim in state court could be viewed as a judgment by New York courts on whether the evidence is legally sufficient. Would that were so. Under New York law, it appears that the decision on the weight of the evidence was limited to the law as it existed at the time of trial, and did not take into account the subsequent change in New York’s depraved indifference law. Accordingly, and unfortunately, the record before us does not disclose a state court determination on the merits to which we can accord deference.

. The State argues that at the time Gutierrez’s conviction became final on September 12, 2005, the Register standard controlled, because the law on deliberate indifference murder only changed in Feingold, which was decided in 2006. But both this court and the New York Court of Appeals have rejected the notion that Feingold changed the law. See Henry v. Ricks, 578 F.3d 134, 139 (2d Cir.2009); Policano, 7 N.Y.3d at 602-03, 825 N.Y.S.2d 678, 859 N.E.2d 484. Feingold merely made explicit what Hafeez, Gonzalez, and Payne had already accomplished. Indeed, in Policano, the Court of Appeals acknowledged that prior cases, beginning with Hafeez, represented "a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in Register and Sanchez.” 7 N.Y.3d at 603, 825 N.Y.S.2d 678, 859 N.E.2d 484.