■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD MOREHOUSE, JR., Appellant. [774 NYS2d 100]—

Cardona, P.J. Appeals (1) from a judgment of the County Court of Ulster County (Bruhn, J.), rendered August 16, 2002, upon a verdict convicting defendant of the crimes of rape in the first degree, sodomy in the first degree (two counts), sexual abuse in the first degree, rape in the third degree, sodomy in the third degree (two counts), intimidating a witness in the third degree, assault in the third degree and endangering the welfare of a child, and (2) by permission, from an order of said court, entered July 7, 2003, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Defendant's convictions stem from his involvement in the June 30, 2001 rape, oral sodomy and sexual abuse of a 15-year-old in the Town of Shawangunk, Ulster County. Initially, we address defendant's CPL 440.10 motion wherein he claims he received ineffective assistance of counsel. Based upon the trial record and the submissions on the motion, County Court did not err in deciding that motion without a hearing (see CPL 440.30 [2]; *People v Satterfield*, 66 NY2d 796, 799 [1985]; *People v Beverly*, 299 AD2d 744, 745 [2002], *lv denied* 99 NY2d 652 [2003]). Notably, the Judge who determined the motion was the same Judge who presided at the trial (see *People v Turcotte*, 252 AD2d 818, 820 [1998], *lv denied* 92 NY2d 1054 [1999]).

The crux of defendant's argument is that defense counsel was so sick from Lyme disease that he was unable to adequately

prepare for and conduct the trial. The record reveals that on June 18, 2002, the day after his diagnosis, defense counsel appeared in court accompanied by defendant for trial and requested a one-week adjournment in accordance with his doctor's recommendation. County Court granted a two-day adjournment. Thereafter, on June 20, 2002, the trial proceeded without any further indication from defense counsel that he was ill, unable to function, or needed further time to prepare his case.

"The crucial question is whether the defense counsel's condition affected his performance at the trial" (*People v Badia*, 159 AD2d 577, 578 [1990], *lv denied* 76 NY2d 784 [1990] [citations omitted]). Here, while defense counsel admitted in an affidavit that there were times "when [he] was aware of difficulty in concentrating and being very tired," we note that he pursued the defense of factual innocence at trial, effectively cross-examined witnesses bringing out inconsistencies in their testimony, made appropriate trial objections and motions, and made a cogent opening statement and a well-reasoned closing statement, all in keeping with his trial strategy. In fact, County Court specifically noted defense counsel's appropriate performance at trial and found no indication that he was affected by illness or "a discernable drop off from his usual high level of professional competence."

As to specific allegations of ineffective assistance, the claimed omissions included the failure to hire medical or forensic experts, interview prosecution witnesses, pursue previously planned but unspecified questions during cross-examination and provide adequate time for discussion with defendant during evening sessions after trial days and over the weekend between trial days. Even if deemed true, these allegations are premised upon defendant's disagreement with defense counsel's tactics and strategies, which, in our view, fail to rise to the level of true ineffectiveness, "particularly when viewed in the context of the totality of the circumstances of the representation provided at the trial level" (*People v Saunders*, 301 AD2d 869, 872 [2003], *lv denied* 100 NY2d 542 [2003]; *see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 146 [1981]). " '[O]bjectively evaluated,' " (*People v Benevento, supra* at 712, quoting *People v Angelakos*, 70 NY2d 670, 673 [1987]), we find defense counsel's performance "consistent with [the] strategic decisions of a 'reasonably competent attorney' " (*People v Benevento, supra* at 712, quoting *People v Satterfield, supra* at 799) and conclude that defendant received meaningful representation and, therefore, the effective assistance of counsel (*see*

*People v Benevento, supra* at 712; *People v Baldi, supra* at 147; *People v Saunders, supra* at 872).

Defendant further contends that County Court abused its discretion in its *Sandoval* ruling by permitting the prosecution to inquire into an alleged uncharged assault by him upon his wife. We disagree. In our view, no *Sandoval* ruling was required because the prosecution sought to introduce the alleged prior bad act only to rebut defendant's evidence of good character, if admitted. An advance ruling on the admissibility of this evidence was unnecessary since the admission of character evidence does not implicate the procedures in *Sandoval* (*see People v Sandoval*, 34 NY2d 371, 373 n 1 [1974]; *People v Jones*, 121 AD2d 398, 398-399 [1986], *appeal dismissed* 69 NY2d 707 [1986]). During defendant's testimony, he attested to his good character by submitting his military service record. Therefore, he opened the door to questioning concerning the prior bad act (*see People v Jones, supra* at 398-399; *cf. People v Rojas*, 97 NY2d 32, 38 [2001]; *People v Rivera*, 306 AD2d 186, 187 [2003], *lv denied* 100 NY2d 598 [2003]; *People v Bailey*, 303 AD2d 1011, 1011 [2003], *lv denied* 100 NY2d 578 [2003]).

Next, contrary to defendant's contention, we find the People established a proper foundation for the testimony of Erin Ptak, a sexual assault nurse examiner (hereinafter SANE), who conducted an examination of the victim at the hospital. She testified that visible lacerations in the victim's vaginal area and a tear in her hymenal tissue were consistent with forcible compulsion. The record shows that Ptak's competency as a SANE was derived from both formal training and actual experience (*see Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 398 [1941]; *People v Munroe*, 307 AD2d 588, 591 [2003], *lv denied* 100 NY2d 644 [2003]; *People v Burt*, 270 AD2d 516, 518 [2000]). Ptak testified that she treated five to eight rape patients a year during the eight years she spent as an emergency room registered nurse before undergoing her SANE training. She indicated that she had 40 or more hours of SANE training to become certified as a SANE, involving evidence collection through gynecological examination, as well as the physical, pharmacological and emotional treatment of rape patients. Since receiving her SANE training, she had treated 41 SANE cases, assisted in another 13 and consulted in 8 pediatric cases. We note that " 'expert medical testimony need not come from a licensed doctor' " (*People v Munroe, supra* at 591, quoting *People v Kehn*, 109 AD2d 912, 914 [1985]; *see People v Rice*, 159 NY 400, 410 [1899]; *People v Zavaro*, 138 AD2d 430, 431 [1988], *lv denied* 71 NY2d 1035 [1988]). Under the circumstances, we can-

not say that County Court abused its discretion in determining that Ptak was qualified to offer an opinion regarding the victim's injuries.

Turning to defendant's claim that the 16-year sentence imposed upon his conviction for rape in the first degree was excessive, we note that it was within the statutory parameters for a class B violent felony and was not the maximum authorized (*see* Penal Law § 70.02 [3] [a]; § 130.35 [1]). Despite defendant's lack of a prior criminal record, we cannot say that County Court abused its sentencing discretion under the circumstances herein, given the brutal nature of the crimes perpetrated upon the young victim. Moreover, our review of the record discloses no extraordinary circumstances warranting exercise of our discretion in the interest of justice to modify the sentence (*see* CPL 470.15 [6] [b]).

Finally, we have examined defendant's contentions regarding alleged prosecutorial misconduct and find that they are unpreserved and, in any event, lacking in merit.

Mercure, Peters, Mugglin and Kane, JJ., concur. Ordered that the judgment and order are affirmed.