■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY CICCONE, Appellant. [934 NYS2d 563]—

Kavanagh, J.

In May 2008, a four-month-old child was brought to the emergency room of a local hospital because he had been bleeding profusely from his nose and mouth and had been unable to breath. An investigation subsequently established that the child had been injured when a baby wipe had become lodged in the child's mouth while being cared for by defendant at his apartment. Because the injuries appeared to be life-threatening, the child was transferred to the pediatric intensive care unit of another hospital, where numerous bruises were noted on the infant's face, mouth and head. In addition, the child was found to have a significant laceration to his palate and acute fractures on his right and left tibia and right thigh bone.[1]

When first questioned about the child's injuries, defendant stated that he was caring for him while the mother was asleep in the apartment. He recalled briefly leaving the child unattended to go to the kitchen to get him a bottle. While in the kitchen, defendant heard a strange sound and, upon returning to the bedroom, found the child choking on a baby wipe that had become lodged in his mouth. Defendant stated that he immediately woke the mother and told her to call 911. At that point, defendant recalled trying to remove the wipe from the child's mouth, but inadvertently forcing it so that it became lodged in the infant's throat. Defendant stated that he was eventually able to remove the wipe from the child's mouth, and surmised that, in the process, apparently scratched the infant's palate with his finger, because the child began to bleed profusely from the mouth and nose. Only after being informed that fractures had been found in an examination of the child's legs did defendant tell medical personnel that he had slipped and fallen twice while he was holding the child and attempting to remove the baby wipe from his mouth.

Because the injuries noted on the child could not have been self-inflicted and, according to medical authorities, were consistent with those found on a child who had been physically abused, defendant was arrested and charged with assault. The matter was subsequently presented to a grand jury and an indictment was returned charging defendant with assault in the first degree, assault in the second degree (three counts) and

---

1. It appears that the child has fully recovered from these injuries.

endangering the welfare of a child. After a jury trial, defendant was convicted of assault in the first degree, two counts of assault in the second degree and endangering the welfare of a child. He was subsequently sentenced to eight years in prison for his conviction of assault in the first degree and five years in prison for each conviction of assault in the second degree, all to be served consecutively,[2] plus periods of postrelease supervision. Defendant now appeals.

Defendant initially contends that these convictions were not supported by legally sufficient evidence. As relevant here, to be convicted of assault in the first degree, it had to be proven that defendant used a dangerous instrument on the child, intending to and actually causing the child serious physical injury (*see* Penal Law § 120.10 [1]).[3] In that regard, the People presented evidence not only that the child had been seriously injured, but also that the wipe as allegedly used by defendant on the child was capable of inflicting such injury and, as such, constituted a dangerous instrument.[4] As for defendant's conviction for assault in the second degree, the People were required to prove that defendant intentionally caused physical injury to a child less than seven years old (*see* Penal Law § 120.05 [9]). Finally, to establish that defendant endangered the welfare of the child, competent evidence had to be presented establishing that defendant "knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child" (Penal Law § 260.10 [1]).

In challenging the legal sufficiency of these convictions, defendant contends that no direct evidence exists establishing that he intended to injure the child or that he was responsible for forcing the baby wipe into the child's mouth. Initially, we note that in determining whether defendant's convictions were supported by legally sufficient evidence, we must "view the evidence in the light most favorable to the People and will not disturb the verdict if the evidence demonstrates a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury" (*People v Mar-*

---

2. He received a concurrent one-year sentence on his conviction of endangering the welfare of a child.

3. Serious physical injury means "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]).

4. A dangerous instrument is "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]).

*shall*, 65 AD3d 710, 711 [2009], *lv denied* 13 NY3d 940 [2010] [citations omitted]; *see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Lewis*, 83 AD3d 1206, 1207 [2011], *lv denied* 17 NY3d 797 [2011]). This standard of appellate review applies to all criminal convictions, including those that are based entirely on circumstantial evidence (*see People v Ficarrota*, 91 NY2d 244, 248-249 [1997]; *People v Harris*, 88 AD3d 83, 86 [2011], *lv granted* 17 NY3d 863 [2011]).

Here, the People presented competent evidence establishing that when this child sustained these injuries, defendant was charged with his care and was the only person who could have been responsible if these injuries were intentionally inflicted. Moreover, the injuries sustained by this child were substantial and serious and, as previously noted, could not have been self-inflicted by a four-month-old child. In addition, two physicians testified, one of whom is a pediatric radiologist, that the fractures found on the child were not the result of accidental or inadvertent contact but, instead, were caused, in their opinion, by the child being battered, assaulted and physically abused. This testimony stood in stark contrast to defendant's belated admission that he had fallen twice while holding the child when he was trying to remove the wipe from the child's mouth. Simply stated, this evidence, when viewed as an integrated whole, provided a rational as well as a legal basis for the conclusions reached by the jury as embodied by its verdict (*see People v Bleakley*, 69 NY2d at 495; *People v Wright*, 81 AD3d 1161, 1163 [2011], *lv denied* 17 NY3d 803 [2011]). In that same vein, we also conclude that each conviction is supported by the weight of the credible evidence presented at trial (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Gratton*, 51 AD3d 1219, 1220-1221 [2008], *lv denied* 11 NY3d 736 [2008]).

Defendant also challenges the People's use of rebuttal witnesses to testify to his character and counter his claim that he would never intentionally harm a child. County Court should not have permitted any of the character witnesses, including those called by defendant, to testify to specific incidents of his conduct on this issue and erred in allowing one witness to testify that defendant used drugs with her in the presence of her child. However, much of the character evidence presented by the People at trial represented an appropriate response to defendant's evidence of his good character and, as offered, tended "to negate the trait in issue" (*People v Rojas*, 97 NY2d 32, 38 [2001]; *see People v Nicosia*, 18 AD3d 673, 673 [2005]; *People v Morehouse*, 5 AD3d 925, 928 [2004], *lv denied* 3 NY3d 644 [2004]). Also, any error that County Court may have committed in

regard to this testimony was harmless, especially when considered in light of its instruction to the jury that this evidence "was offered solely for [the jury's] consideration on the question of the reputation for non-violence and his relationship with children" and that "[the jury could] consider it for that limited purpose and none other."

We also note that defendant did not object to County Court's statements to the jury during the voir dire as to the troubling nature of the crimes set forth in the indictment (*see People v Harper*, 7 NY3d 882, 882-883 [2006]). Moreover, as made, these statements were clearly directed not at defendant, but at the nature of the injuries that were sustained by the child and were designed to prepare the jury for the difficult and disturbing testimony that would be presented by the People at trial. More importantly, as given, these statements in our view did not result in any prejudice that could be fairly interpreted as depriving defendant of a fair trial. And, although County Court, in its introductory remarks to the jury, did not inform the jury that the indictment was not evidence, the court did provide such an instruction prior to the jury commencing its deliberations (*see People v Davis*, 208 AD2d 989, 989 [1994], *lv denied* 84 NY2d 1030 [1995]; *see also People v Greaves*, 246 AD2d 360, 360-361 [1998], *affd* 94 NY2d 775 [1999]; *compare People v Abreu*, 74 AD2d 876, 877 [1980]). Finally, the majority of defendant's claims regarding prosecutorial misconduct—which, in our view, was not so pervasive as to deprive defendant of a fair trial (*see People v Demming*, 116 AD2d 886, 887-888 [1986], *lv denied* 67 NY2d 941 [1986]; *see also People v Dickson*, 58 AD3d 1016, 1018 [2009], *lv denied* 12 NY3d 852 [2009])—were not preserved by appropriate objection and, therefore, are not subject to appellate review (*see* CPL 470.05 [2]).

We do agree with defendant that his sentence must be modified because not all of his convictions for assault involved separate and distinct acts for which consecutive sentences could be imposed. Specifically, in charging defendant with assault in the first degree, the People alleged that he caused serious physical injury to the child by forcing a baby wipe into his mouth. Since defendant's conviction for assault in the second degree under the second count of the indictment was based on an allegation that the child had sustained a laceration to his palate when defendant forced the wipe into his mouth, it involved the very same act that led to defendant's conviction for assault in the first degree. Because the People failed to establish that these offenses were separate and distinct from each other or were " 'committed by separate and distinct acts' " (*People v Munoz*,

50 AD3d 1316, 1317 [2008], *lv denied* 10 NY3d 962 [2008], quoting *People v Goodband*, 291 AD2d 584, 585 [2002]; *see* Penal Law § 70.25 [2]), the sentences for these two convictions cannot run consecutively to each other and defendant's sentence to that limited extent must be modified.[5] Defendant's other conviction for assault in the second degree (count 3) was based on the fracture of the child's femur, and obviously was the product of a separate and distinct act for which a consecutive sentence could be and was properly imposed (*see People v Munoz, supra*).

To the extent not specifically addressed, defendant's remaining contentions have been reviewed and found to be without merit.

Spain, J.P., Rose, Stein and Garry, JJ., concur. Ordered that the judgment is modified, on the law, by directing that defendant's sentences for assault in the first degree under count 1 of the indictment and assault in the second degree under count 2 of the indictment shall run concurrently rather than consecutively, and, as so modified, affirmed.

---

**5.** Notably, at sentencing the People informed County Court that they were not asking for consecutive sentences.