■ In the Matter of APRIL WW. and Another, Children Alleged to be Neglected. DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KIMBERLY WW., Appellant. [21 NYS3d 379]—

Garry, J. Appeals from two orders of the Family Court of Delaware County (Becker, J.), entered January 10, 2014 and May 20, 2014, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's children to be neglected.

Respondent is the mother of a son and daughter (born in 2002 and 2009, respectively) who were removed from her custody in December 2012 based upon allegations that the daughter had been sexually abused. Petitioner commenced this neglect proceeding alleging that respondent had provided the children with inadequate guardianship and supervision by, among other things, residing with the children in the household of an adjudicated sex offender and permitting the children to associate with certain other individuals who were suspected or adjudicated to be sexual offenders despite a safety plan precluding such contact. Following a fact-finding hearing, Family Court determined, in a January 2014 order, that respondent had neglected the daughter by permitting her to be sexually abused by an unknown perpetrator and that the son had been derivatively neglected. After a dispositional hearing, the court, by order entered in May 2014, continued the children's placement in petitioner's custody. Respondent appeals.

At the fact-finding hearing, a caseworker testified that the daughter had never made any disclosures of sexual abuse, but that respondent had been living with the son and daughter for about a year and a half in the home of the maternal grandmother's paramour, a risk level three sex offender. After petitioner received an anonymous hotline report that the paramour had sexually abused the daughter, her treating physician and an emergency room nurse conducted sexual assault examinations. Both of these practitioners testified that, in their professional opinions, the daughter had been sexually abused. Respondent testified on her own behalf that she had never permitted the daughter to be alone with the paramour, and respondent's expert pediatrician testified that he found no evidence of sexual abuse in the daughter's medical records or the examination reports of petitioner's experts. Family Court rejected the conclusions of respondent's expert and found that the daughter had been sexually abused and neglected based upon the opinions of petitioner's experts.

Upon appeal, respondent and the attorney for the children contend that neither the treating physician nor the nurse should have been permitted to testify as experts on the issue of child sexual abuse, as neither possessed the skill, training or

experience to give a professional opinion as to the question of whether the daughter had been sexually abused. Before admitting expert testimony, a court must determine whether a proposed expert "possess[es] the requisite skill, training, education, knowledge and/or experience to qualify as [an] expert[ ] on the [particular matter at issue] . . . in light of prevailing professional standards" (*Hurrell-Harring v State of New York*, 119 AD3d 1052, 1053 [2014]; *see Matter of Nicole V.*, 123 AD2d 97, 108 [1987], *affd* 71 NY2d 112 [1987]). Whether to admit the testimony of an expert witness "is generally left to the trial court's discretion" (*Matter of Angelo AA. [Tashina DD.]*, 123 AD3d 1247, 1250 [2014]).

The treating physician, who was board-certified in family medicine, had participated in general training in child sexual abuse and completed one sexual assault examination of a child during a residency that she had completed 15 years earlier. Thereafter, she had never participated in any additional pediatric sexual abuse training, nor had she conducted any additional pediatric sexual assault examinations prior to the examination of the daughter. The physician had treated the daughter since shortly after her birth and had seen her on about 20 previous occasions at the time that respondent brought her in for a sexual assault examination, stating that child protective authorities had wrongly alleged that the daughter had been sexually abused. Confronted with this concern, the physician sought guidance from a colleague who was an experienced pediatrician to "affirm what I believed was the correct way to examine a child," and the pediatrician advised her on the procedures to follow during the examination, including instructing her how to position the child and to perform certain tests that the physician would not otherwise have "felt comfortable doing."[1] Upon conducting an examination, the physician made various observations that led her to conclude that there was a "[h]igh probability" that the daughter had been sexually abused.

The written report completed by the treating physician following this examination was submitted into evidence. There were notable discrepancies between the physical findings set forth in the report and those described in her testimony. During cross-examination, the physician acknowledged that she did not know the meaning of certain terms that were used by the other two expert practitioners. The physician further acknowledged that she had no experience other than the single

---

1. No testimony was offered as to this advising pediatrician's training, expertise or experience, if any, in pediatric sexual abuse.

prior child sexual assault examination that she had performed many years before upon which to premise various conclusions she had drawn. Notably, these conclusions were the sole basis of her professional opinion that the daughter had been sexually abused.

As there was no objection made relative to the treating physician's qualifications at trial, the parties have "waived appellate review regarding the admissibility of this testimony" (*Matter of Kaitlyn R.*, 267 AD2d 894, 896 [1999]). We ascribe no error to Family Court's failure to make a sua sponte finding that the expert was not qualified. Nevertheless, in light of the physician's limited training and lack of experience in pediatric sexual abuse, we find that the probative value of her testimony as to whether the child had been sexually abused was low, and her opinion was thus entitled to little weight (*see generally Matter of Julia BB. [Diana BB.]*, 42 AD3d 208, 222 [2007], *lvs denied* 9 NY3d 815 [2007]).

The challenge to the qualifications of the registered nurse was properly preserved by respondent's objections during the course of the fact-finding hearing. Voir dire revealed that the nurse was licensed as a registered nurse, had practiced as an emergency room nurse for 17 years and was certified in emergency room medicine as well as other specialties, but lacked certification as a sexual assault nurse examiner (hereinafter SANE). The nurse testified that she had participated in two SANE trainings but had not yet completed all of the requirements for certification. She had performed several sexual assault examinations in the course of her career, approximately three of which had involved females under the age of five. Although the nurse's training and experience were limited (*compare People v Morehouse*, 5 AD3d 925, 928 [2004], *lv denied* 3 NY3d 644 [2004]), we do not find that her credentials were so inadequate that it was an abuse of discretion for Family Court to permit her to testify as an expert. Instead, the nurse's lack of SANE certification and limited pediatric sexual abuse experience were factors affecting the weight to be given to her professional opinion (*see People v Lashway*, 112 AD3d 1222, 1223-1224 [2013]).

In contrast to the limited qualifications of petitioner's experts, respondent's expert pediatrician, Aaron J. Miller, was highly qualified.[2] Miller testified that he is board-certified in general pediatrics and child abuse pediatrics, that he took

---

2. We reject petitioner's contention that it received inadequate notice of Miller's identity. As Family Court noted in overruling petitioner's objection, there had been no demand for expert disclosure (*see* CPLR 3101 [d] [1] [i];

child abuse electives in medical school and again during his residency, and that he was thereafter trained in the performance of pediatric sexual assault examinations while working in a hospital child advocacy center. Miller testified that he had evaluated a total of nearly 1,400 children for suspected sexual abuse, approximately 350 of whom were females under the age of five. He had been qualified as an expert in child abuse pediatrics in approximately 60 previous Family Court and criminal cases.[3]

Miller testified that, in his professional opinion, the medical findings were not suggestive of sexual abuse and the opinions of the nurse and physician to the contrary were incorrect. Miller did not personally conduct an examination of the daughter, but testified that photographs taken by the nurse were sufficiently clear to permit him to draw "confident conclusions." He testified as to the physical findings revealed in these photographs, describing his review and conclusions in detail in the course of his testimony, and opined that the photographs did not reveal evidence of sexual abuse. He further described standard examination protocols and identified multiple failures to follow such protocols in the examinations conducted by petitioner's experts. He testified that the testimony and reports of these experts revealed misconceptions about normal anatomy that had led them to incorrectly identify certain findings as indicative of sexual abuse when in fact they were normal in girls of the daughter's age. In sum, Miller testified that, with a reasonable degree of medical certainty, he found nothing in the examination reports or the daughter's medical records that reliably revealed evidence of sexual abuse.

Family Court did not analyze the various expert determinations or address the flaws identified by Miller in the procedures and findings of petitioner's experts, but, instead, rejected Miller's opinion solely because he had not examined the daughter. "Although Family Court's credibility findings are

---

Family Ct Act § 1038 [d]). Petitioner did not request an adjournment when Miller's identity was disclosed and does not now contend that the late disclosure was intentional or willful (see Hansel v Lamb, 257 AD2d 795, 796 [1999]). The record instead reveals that Miller's availability was not confirmed until shortly before he testified, and that all parties knew that respondent's counsel had been attempting to locate a qualified physician to testify during the hearing, which had been adjourned several weeks earlier specifically to facilitate the search.

3. Miller stated that, in his previous appearances as a medical expert, he had always testified on behalf of child protective authorities or the prosecution; this proceeding was the first time he had ever appeared on behalf of a parent charged with neglect, and the second time that he had testified that the medical findings did not indicate abuse.

typically given great deference, no real credibility determinations were rendered here" (*Matter of Ashley RR.*, 30 AD3d 699, 702 [2006]). The mere fact that Miller had not conducted an exam—while not without significance—does not outweigh the disparity between Miller's extensive, specialized training and experience and the far more sparse credentials of petitioner's experts. This is particularly true when taken in conjunction with Miller's unrebutted criticisms of the procedures followed by petitioner's experts, and the lack of any other evidence that revealed sexual abuse, such as conclusive medical findings, disclosures by the daughter or expert testimony that she displayed behaviors consistent with those typically seen in sexually abused children. Upon review of these factors and the rest of the record evidence, we find that petitioner failed to satisfy the burden of proving that the daughter was sexually abused. The record thus lacks the requisite sound and substantial basis to find that she was neglected and the son was derivatively neglected on this basis (*see Matter of Nassau County Dept. of Social Servs. [Juliette C.]*, 176 AD2d 881, 882 [1991]; *see also Matter of Julia BB. [Diana BB.]*, 42 AD3d at 227).

Both at trial and upon appeal, the attorneys for the children argue that, although petitioner did not establish that the daughter was sexually abused, other record evidence reveals that both the daughter and the son were neglected. We agree. Respondent had been indicated on numerous previous child protective reports for various incidents of inadequate guardianship and supervision involving both children, and, although petitioner offered assistance to her each time, she did not accept help until after the children were removed. Over a lengthy period of time and despite instructions not to do so, respondent repeatedly "allow[ed] sex offenders and other questionable individuals around the children" (*Matter of Alyson J. [Laurie J.]*, 88 AD3d 1201, 1203 [2011], *lv denied* 18 NY3d 803 [2012]). As previously noted, respondent lived with the children in the home of the maternal grandmother's paramour for a year and a half, despite her knowledge that he was an adjudicated sex offender. Although respondent testified that she had nowhere else to live, she also acknowledged that she knew that she could have sought assistance from petitioner and did not do so. In addition to the paramour, respondent's relatives and associates included several other individuals who were adjudicated sex offenders or were implicated in then-ongoing sexual abuse investigations involving other children. Respondent agreed to a safety plan by which she would keep these individuals away from her children, but acknowledged in her testimony that she

did not do so; on one occasion a caseworker found a proscribed individual hiding in respondent's closet. Additionally, there was medical evidence that the daughter suffered from poor hygiene, wheezing episodes resulting from exposure to second-hand smoke and multiple candidal infections of the diaper area, which persisted despite medical treatment, suggesting that she was not being given the prescribed medication or kept clean. Finally, respondent acknowledged that she knowingly directed the son to go alone to a relative's home where a vicious dog that had previously bitten respondent was present; the dog bit the son, who required stitches. Thus, taken as a whole and independent of the sexual abuse allegations, we find that petitioner established by a preponderance of the evidence that the physical, mental and emotional condition of the son and daughter had been impaired or placed in imminent danger of becoming impaired as a result of respondent's failure to exercise a minimum degree of care in providing them with supervision and guardianship (*see* Family Ct Act §§ 1012 [f] [i]; 1046 [b] [i]; *Matter of Alyson J. [Laurie J.]*, 88 AD3d at 1202-1203).

Nevertheless, a new dispositional hearing is required. The record reveals that, shortly before the dispositional hearing, petitioner revised the permanency goal for the children from reunification with respondent to placement for adoption. This change was based in large part upon respondent's continued failure to accept that the daughter had been sexually abused. At the dispositional hearing—again, premised largely upon respondent's failure in this regard—Family Court declined to change that goal and directed petitioner to commence proceedings to terminate respondent's parental rights. At the same time, however, the court directed petitioner to "work against the goal [of adoption]" by continuing to exercise diligent efforts to reunify the children with respondent. As we have previously noted, nothing in Family Ct Act § 1089 (d) (2) (i) permits a court to impose two contradictory goals upon a respondent simultaneously (*see Matter of Julian P. [Melissa P.—Zachary L.]*, 106 AD3d 1383, 1384 [2013]; *Matter of Dakota F. [Angela F.]*, 92 AD3d 1097, 1098-1099 [2012]). In view of this, and in light of our determination that petitioner did not prove that the daughter was sexually abused, a new dispositional hearing is required to assess the children's best interests (*see generally Matter of Tony H.*, 28 AD3d 379, 379 [2006]).

Peters, P.J., Rose and Clark, JJ., concur. Ordered that the order entered January 10, 2014 is affirmed, without costs. Ordered that the order entered May 20, 2014 is modified, on

the law, without costs, by reversing so much thereof as simultaneously directed petitioner to undertake diligent efforts to encourage and strengthen the parental relationship and also to file termination of parental rights petitions against respondent; matter remitted to the Family Court of Delaware County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.