People v Ash (2018 NY Slip Op 04601)





People v Ash


2018 NY Slip Op 04601


Decided on June 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 21, 2018

108450

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
CONNOR L. ASH, Appellant.

Calendar Date: May 3, 2018

Before: McCarthy, J.P., Devine, Clark, Aarons and Pritzker, JJ.


Brian M. Quinn, Albany, for appellant.
Karen Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.


Aarons, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered April 7, 2016, upon a verdict convicting defendant of the crimes of assault in the second degree and endangering the welfare of a child.
In January 2015, defendant's son (hereinafter the victim), who was almost three months old at the time, sustained a fracture of his right femur after defendant, who was 19 years old at the time, forcefully picked him up by the leg as the victim was lying in a swing. In connection with this incident, defendant was charged by indictment with assault in the second degree and endangering the welfare of a child. Following a jury trial, defendant was convicted as charged and thereafter sentenced to an aggregate prison term of seven years, to be followed by three years of postrelease supervision. County Court also issued an eight-year order of protection in favor of the victim. Defendant appeals. We affirm.
Defendant's challenge with respect to the legal sufficiency of the evidence is not preserved for our review in light of his failure to renew his motion to dismiss at the close of all proof (see People v Lane, 7 NY3d 888, 889 [2006]; People v Spencer, 152 AD3d 863, 863 [2017], lv denied 30 NY3d 983 [2017]; People v Pine, 126 AD3d 1112, 1114 [2015], lv denied 27 NY3d 1004 [2016]). Defendant, however, also contends that the verdict was against the weight of the evidence and, therefore, we consider the evidence adduced with respect to each [*2]element of the challenged crimes (see People v Ruiz, 148 AD3d 1212, 1215 n [2017], lv denied 30 NY3d 983 [2017]; People v Williams, 138 AD3d 1233, 1234 [2016], lvs denied 28 NY3d 932, 939 [2016]). Where, as here, a different outcome would not have been unreasonable, we "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Danielson, 9 NY3d 342, 348 [2007]; see People v Mould, 143 AD3d 1186, 1186 [2016], lv denied 28 NY3d 1187 [2017]).
As relevant here, assault in the second degree requires that the People prove that defendant, being 18 years old or older, caused physical injury to a person less than seven years old with the intent to do so (see Penal Law § 120.05 [9]). With respect to the endangering the welfare of a child charge, the People must establish, as relevant here, that defendant knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 17 years old (see Penal Law § 260.10 [1]).
The trial testimony reveals that the victim lived in a three-bedroom apartment with his mother and defendant, who were not married to each other, and his maternal grandparents, among others. The mother testified that defendant watched the victim during the day while the mother worked. On the morning in question, the mother fed him a bottle in their bedroom before she left for work. The victim then went back to sleep, and the mother stated that she did not notice any injuries or bruises on the victim's legs at that time. The mother woke up defendant so that he could watch the victim, and she was driven to work by the victim's grandfather at approximately 9:45 a.m.
The victim's grandmother testified that she woke up around 10:00 a.m. While in the kitchen, the grandmother heard the victim crying loudly and she saw defendant in the living room holding the victim. The grandmother took the victim from defendant and tried to calm him. The grandfather returned approximately 40 minutes after he left, and he testified that the grandmother was holding the victim, who was "putting up a good cry." The grandmother continued to soothe the victim, but, when she shifted or repositioned him, he started crying again. Both the grandfather and the grandmother noticed that the victim's right leg was swollen. The grandfather testified that the victim's leg was "a little bit of purplish" and that his cry was not his normal cry.
The victim was then taken to the hospital, and a physician who treated the victim testified that the victim had a "transverse, dislocated, comminuted femur fracture" in his right leg. The physician also stated that the sustained injuries were consistent with a "traumatic blow" and not with a fall from a bed or changing table. The emergency department physician who saw the victim likewise testified that the victim was not capable of causing the sustained injuries on his own and that she was concerned that the injuries resulted from nonaccidental trauma. The emergency department physician also stated that when she examined the victim, his right leg was swollen and "did not look right." A physician assistant who treated the victim testified that the victim's X ray showed an "angulated fracture of the femur, approximately 40 degrees of angulation." The physician assistant further stated that the mechanism of injury was "consistent with force being applied to the posterior bottom of the thighbone in an upward fashion." The physician assistant added that the amount of applied force must have been "fairly significant."
A deputy sheriff questioned defendant about the victim's injuries. Defendant told the deputy sheriff that, as he was warming a bottle, the victim was yelling and crying at him as he was lying in a swing. Defendant became "very agitated" and was irritated that the victim would not stop crying. According to the deputy sheriff, defendant stated that he then "grabbed the child [*3]pretty forcefully," at which point the victim cried harder. In his voluntary statement to the deputy sheriff, defendant confirmed that he grabbed the upper part of the victim's right leg with his left hand and "grabbed him forcefully with [his] left hand while picking him up." A sergeant testified that he interviewed defendant and was told by defendant that the victim was yelling nonstop as he was warming a bottle. Defendant told the sergeant that he would become unreasonably upset when babies cried. The sergeant stated that when he asked defendant about the victim's injury, defendant responded that he may have squeezed the victim's leg and that he had picked up the child "aggressively because he was upset that the [victim] was crying."
The People also introduced into evidence thousands of pages showing messages sent by defendant through Facebook to numerous people. Scattered among these pages were conversations that defendant had with other women in which he would flirt with them, some of which took place shortly after the time the victim was injured. In some messages, defendant also referred to the victim as an "asshole" or a "demon," that "children make [him] so enraged" and that no one would want to be in a relationship with him because he had a child.
Viewing the foregoing evidence in a neutral light, we are unpersuaded by defendant's claim that the verdict was against the weight of the evidence (see People v Mitchell, 94 AD3d 1252, 1254-1255 [2012], lv denied 19 NY3d 964 [2012]; People v Ciccone, 90 AD3d 1141, 1144 [2011], lv denied 19 NY3d 863 [2012]; People v Ward, 42 AD3d 579, 581 [2007], lv denied 9 NY3d 883 [2007]; People v LeBlanc, 199 AD2d 584, 585 [1993], lv denied 82 NY2d 926 [1994]). In addition, given the severity of the victim's injuries and defendant's admission that he became agitated due to the victim's crying and he "aggressively" picked up the victim, the jury could infer from the surrounding circumstances that defendant possessed the requisite intent to cause physical injury to the victim (see People v Nash, 64 AD3d 878, 881 [2009]; People v Zindle, 48 AD3d 971, 973 [2008], lv denied 10 NY3d 846 [2008]). Although defendant testified to a contrary version of events as to how the victim was injured, the jury was entitled to reject his testimony (see People v Newell, 148 AD3d 1216, 1221 [2017], lv denied 29 NY3d 1035 [2017]).
We are also unpersuaded by defendant's assertion that the admission of the Facebook messages deprived him of fair trial. Such evidence was relevant on the issue of intent (see generally People v Miller, 39 NY2d 543, 549 [1976]), and its probative value outweighed any undue prejudice to defendant. Even though the People focused on excerpts of the Facebook messages during trial, the jury was provided with all of the messages for deliberation. Furthermore, when defendant testified, he explained the context and meaning behind the negative messages concerning the victim. Accordingly, we find that defendant was not deprived of a fair trial based upon the admission of the Facebook messages.
Defendant argues that County Court erred in permitting his wife to testify about a conversation that she had with him because such testimony violated the spousal privilege. We disagree. Specifically, the People asked the wife what defendant told her about how the victim was injured, to which the wife responded, "He said, if he did it, he didn't mean to." Contrary to defendant's assertion, such statement was not "prompted by the affection, confidence and loyalty engendered by the marital relationship" (People v Fediuk, 66 NY2d 881, 883-884 [1985]). As such, the spousal privilege did not apply.
Defendant failed to preserve his argument that the People were impermissibly allowed to question other women at trial about his overtures to them (see People v Long, 291 AD2d 720, 721 [2002], lv denied 98 NY2d 677 [2002]). Nor did defendant preserve his argument that [*4]comments made during the People's summation concerning such overtures or the negative remarks about the victim made through Facebook prejudiced him given the absence of an objection thereto (see People v Johnson, 151 AD3d 1462, 1465 [2017], lv denied 30 NY3d 1106 [2018]). In any event, the challenged remarks were fair comment on the evidence (see People v Jackson, 160 AD3d 1125, 1129 [2018]). Defendant also did not raise an objection when the People asked the victim's mother whether defendant, while in jail, inquired about the victim and, thus, defendant's claim on this point is not preserved.
Defendant's contention that County Court erred in failing to give a circumstantial evidence charge is likewise unpreserved for our review given that he did not request such charge or object to the court's final instructions (see People v Wallace, 8 AD3d 753, 756 [2004], lv denied 3 NY3d 682 [2004]; People v Richards, 290 AD2d 584, 586 [2002], lv denied 98 NY2d 654 [2002]; see generally People v McKenzie, 67 NY2d 695, 697 [1986]). In any event, defendant's claim is without merit. A circumstantial evidence charge is appropriate when the People's case rests entirely on circumstantial evidence (see People v Hardy, 26 NY3d 245, 249 [2015]). In contrast, where, as here, the proof against defendant consisted both of direct evidence — defendant's admission that he quickly and aggressively picked the victim up by the leg and the medical proof concerning the victim's injury — and circumstantial evidence, a circumstantial evidence charge is not required (see People v Rumble, 45 NY2d 879, 880 [1978]; People v Bryce, 174 AD2d 945, 946 [1991], lv denied 79 NY2d 854 [1992]; cf. People v Varmette, 70 AD3d 1167, 1171 [2010], lv denied 14 NY3d 845 [2010]; People v Lewis, 300 AD2d 827, 829 [2002], lv denied 99 NY2d 630 [2003]; People v Struss, 228 AD2d 711, 714 [1996], lv denied 89 NY2d 867 [1996]; compare People v Burke, 96 AD2d 971, 971-972 [1983], affd 62 NY2d 860, 861 [1984]).
To that end, defendant was not deprived of meaningful representation due to his counsel's failure to request a circumstantial evidence charge (see People v McRobbie, 97 AD3d 970, 972 [2012], lv denied 20 NY3d 934 [2012]; People v Setless, 289 AD2d 708, 709 [2001], lv denied 98 NY2d 640 [2002]). Nor can we say that defense counsel's failure to preserve a legal sufficiency argument amounted to ineffective assistance, especially in view of our determination that the verdict was not against the weight of the evidence (see People v Williams, 156 AD3d 1224, 1231 [2017], lv denied 31 NY3d 1018 [2018]). As to defendant's claim that his counsel should have retained a social media expert or psychologist to explain the meaning behind his Facebook posts, such claim is more appropriately suited for a CPL article 440 motion inasmuch as the record does not disclose counsel's decision-making process (see People v Perry, 154 AD3d 1168, 1171 [2017]). We have considered defendant's remaining grievances regarding his counsel's representation of him and, viewing the record in its entirety, we are satisfied that defendant received meaningful representation (see People v Pettway, 58 AD3d 944, 947 [2009], lv denied 12 NY3d 820 [2009]; People v Adams, 51 AD3d 1136, 1136 [2008], lv denied 11 NY3d 784 [2008]; People v Holden, 188 AD2d 757, 760-761 [1992], lv denied 81 NY2d 887 [1993]).
Finally, although the imposed sentence and the duration of the order of protection were the maximum permitted under the relevant statutes (see Penal Law § 70.02 [3] [c]; CPL 530.12 [5]), we disagree with defendant that they were harsh and excessive. Taking into account the victim's tender age, the gravity of his injuries and defendant's failure to take responsibility for his actions, we discern no abuse of discretion or extraordinary circumstances warranting a reduction in the interest of justice (see People v Jennings, 20 AD3d 777, 778 [2005], lv denied 5 NY3d 829 [2005]). Furthermore, any alleged errors in the presentence investigation report did not affect the [*5]sentence (see People v Wright, 160 AD3d 1110, 1113 [2018]). We also note that County Court, during sentencing, was made aware of certain errors, and they were corrected. Defendant's remaining arguments have been considered and lack merit.
McCarthy, J.P., Devine, Clark and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.